## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

Diana P.,

               Plaintiff,

v.

Kilolo Kijakazi, Acting Commissioner of
Social Security,[1]

               Defendant.

Civil No. 3:20-cv-00837-TOF

September 22, 2021

## RULING ON PENDING MOTIONS

The Plaintiff, Diana P.,[2] appeals the decision of the Commissioner of Social Security, rejecting her application for Title XVI Supplemental Security Income ("SSI") benefits. (Compl., ECF No. 1.) She has moved the Court for an order reversing the Commissioner's decision, and in her accompanying memorandum of law, she seeks an award of "full benefits." (ECF Nos. 28, 28-1 at 1.) The Commissioner has moved for an order affirming the decision. (ECF No. 35.)

The Plaintiff makes five principal arguments in support of her motion. (*See* discussion, Section I *infra*.) For the reasons that follow, the Court agrees that under the facts of this case, the Administrative Law Judge ("ALJ") violated the "treating physician rule" and failed properly to develop the administrative record. Without reaching her other arguments, the Court therefore

---

[1]     When the Plaintiff filed this action, she named the then-Commissioner of the Social Security Administration, Andrew Saul, as the defendant. (Compl., ECF No. 1.) Commissioner Saul no longer serves in that office. His successor, Acting Commissioner Kilolo Kijakazi, is automatically substituted as the defendant pursuant to Fed. R. Civ. P. 25(d). The Clerk of the Court is respectfully requested to amend the caption of the case accordingly.

[2]     Pursuant to Chief Judge Underhill's January 8, 2021 Standing Order, the Plaintiff will be identified solely by first name and last initial throughout this opinion. *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).

**GRANTS** the Plaintiff's motion to the extent that she seeks vacation of the Commissioner's decision and remand for further administrative proceedings.  To the extent that she seeks an order reversing and remanding solely for an award and calculation of benefits, her motion is **DENIED**.  The Commissioner's motion to affirm is **DENIED**.

I.    FACTUAL AND PROCEDURAL BACKGROUND

On December 21, 2016, the Plaintiff filed an application for SSI benefits.  (R. 15, 88.)  She claimed that she could not work because of depression, anxiety, paranoia, and bipolar disorder.  (R. 88.)  She alleged a disability onset date of November 28, 2004.[3]  (R. 89.)

On April 27, 2017, the Social Security Administration concluded that the Plaintiff was "not disabled."  (R. 98.)  She asked the Administration to reconsider, but it denied her claim again on August 8, 2017.  (R. 112.)  She therefore requested a hearing before an ALJ, and on December 11, 2018, Judge John Noel held a hearing.  (R. 34-69.)  The Plaintiff's counsel, Sally Zanger, appeared on her behalf.  (R. 34.)  The Plaintiff also presented testimony from her social worker, Marcy Fanello-Diaz (R. 52-59), and the ALJ heard testimony from a vocational expert, Edmond Calandra.  (R. 65-69.)

On February 21, 2019, the ALJ issued an unfavorable decision.  (R. 12-32.)  At Step One of the five-step evaluation process (*see* discussion, Section II *infra*), the ALJ found that the Plaintiff had not engaged in substantial gainful activity since her benefit application date of December 21, 2016.  (R. 17.)  At Step Two, he found that the Plaintiff suffers from the severe

---

[3]    The Plaintiff has filed several prior applications for disability benefits.  Based on a prior Title XVI application dated October 2007, plaintiff was previously adjudicated disabled at the state agency level.  Her benefits ceased on March 11, 2013, after the age of eighteen.  (R. 73, 89.)  On November 20, 2012, she filed a Title II application for children's insurance benefits and an application under Title XVI for SSI on October 14, 2013.  (R. 73.)  The SSA denied her claim and an ALJ issued an unfavorable decision on October 26, 2015.  (R. 70.)

impairments of major depressive disorder, bipolar disorder, anxiety disorder, post-traumatic stress

disorder ("PTSD"), obsessive-compulsive disorder ("OCD"), borderline personality disorder, and

substance abuse disorder.  (R. 17.)  At Step Three, he concluded that the Plaintiff's combination

of impairments did not meet or medically equal the severity of one of the "Listings" in 20 C.F.R.

Part 404, Subpart B, Appendix 1.  (R. 17-20.)  Next, the ALJ determined that the Plaintiff retained

the residual functional capacity ("RFC") to:

> [P]erform a full range of work at all exertional levels but with the following
> nonexertional limitations:  the claimant can perform simple, routine tasks, use
> judgment limited to simple, work related decisions, deal with routine changes in
> the work setting, have no contact with the public and not work on a team with co-
> workers.

(R. 20-25.)

In the course of formulating the RFC, the ALJ considered the opinion evidence in the

record.  He gave "[l]ittle weight" to treating source opinions from the Plaintiff's psychiatrist, Dr.

Jose Santos; from Ms. Fanello-Diaz; and from another social worker named Elaine Rodriguez.  (R.

23.)  The ALJ explained that the treating sources' opinions were "not consistent with the evidence

of record," because they were "not supported by the [non-examining] state agency physicians" and

were "not consistent with the treatment record which shows improved functioning with ongoing

treatment."  (R. 24.)  By contrast, he "gave great weight to the opinions of the DDS non-examining

physicians" because those opinions were "consistent with [his] findings regarding residual

functional capacity as well as the medical evidence of record."  (R. 23.)  He observed that "[w]hile

these doctors were not able to treat the clamant, they had the opportunity to review much of the

evidence in the file, and as physicians designated by the Commissioner, they have vast knowledge

of the Social Security program and its regulations."  (*Id.*)  He did, however, afford "little weight"

to "their findings regarding understanding, remembering, and applying information," because "the

record supports a 'moderate' finding in this area."  (*Id.*)

Proceeding to Step Four of the five-step process, the ALJ found that the Plaintiff had no past relevant work.  (R. 25.)  Finally, at Step Five, he relied on the testimony of the vocational expert to conclude that "there are jobs that exist in significant numbers in the national economy that the claimant can perform," including laundry worker, kitchen helper, and hand picker.  (R. 25-26.)  Summing up, he held that "[t]he claimant has not been under a disability, as defined in the Social Security Act, since December 21, 2016, the date the application was filed."  (R. 26.)  The Plaintiff appealed, but on April 29, 2020, the Appeals Council denied her request for review.  (R. 1.)

The Plaintiff filed this action on July 17, 2020.  (Compl., ECF No. 1.)  In her complaint, she alleged that "the [ALJ], the Appeals Council and the Commissioner . . . committed error as a matter of law in failing to find that the evidence presented by the plaintiff established that she is disabled."  (*Id.* ¶ 18.)  She also "disagreed" with the ALJ's decision "because it is not supported by substantial evidence," and "because it contains errors of law including but not limited to failing to give proper weight to the opinion of the treating physician and therapist."  (*Id.* ¶¶ 19-20.)  On November 24, 2020, the Commissioner denied the allegations of the complaint by filing the Certified Administrative Record.  (ECF No. 18; *see also* Standing Scheduling Order, ECF No. 7, at 2 (stating that, in the District of Connecticut, the filing of administrative record is "deemed an Answer (general denial) to Plaintiff's Complaint").)

On March 19, 2021, the Plaintiff moved for an order reversing the Commissioner's decision.  (ECF No. 28.)  In her accompanying memorandum of law (ECF No. 28-1), she made five principal arguments.  First, she argued that the ALJ erred when he failed to give controlling weight to the opinions of her treating psychiatrist, Dr. Jose Santos, in violation of the treating physician rule.  (*Id.* § A.)  Second and relatedly, she contended that the ALJ did not give valid

reasons for the less-than-controlling weight that he assigned to her other treating providers' opinions, nor for the great weight that he assigned to parts of the reports from the non-examining state agency psychologists.  (*Id.* § B.)  Third, she argued that before the ALJ could discount her treating physician's opinion to the degree that he did, he was obliged to develop the record by requesting additional information.  (*Id.* § C.)  Fourth – and also relatedly – she charged the ALJ with "'cherry picking' evidence to support his residual functional capacity analysis and reject[] . . . the opinions of the treating physician," which "resulted in a decision not based on substantial evidence."  (*Id.* § D.)  Fifth and finally, she asserted that the ALJ's Step Three and Step Five determinations were likewise unsupported by substantial evidence.  (*Id.* § E.)  In her motion paper, she asked for "an order reversing the final decision of the Commissioner" (ECF No. 28), and in her memorandum she added a request that the Court award her "full benefits."  (ECF No. 28-1, at 1.)

On May 14, 2021, the Commissioner moved for an order affirming his final decision.  (ECF No. 35.)  He argued that the ALJ properly assigned little weight to the Plaintiffs' treating providers' opinions, because "they were not consistent with the evidence of record."  (ECF No. 35-1, at 9.)  He added that "[i]n this case, the ALJ provided several examples of treatment notes and statements inconsistent with the [treaters'] opinions," including a note documenting that "Plaintiff was in relatively good spirits and more talkative than usual" during one visit, and another note memorializing her wish "to get a pet cat" and assume "the responsibility associated with it."  (*Id.*)  In summary, he stated that "[t]he record contained many opinions, and the ALJ properly considered all of them, according them weight based on how consistent each opinion was with the record as a whole."  (*Id.* at 10.)

5

The Plaintiff responded to the Commissioner's motion on June 2, 2021.  (ECF No. 39.) Among other arguments, she contended that in denying controlling weight to her treating providers' opinions, the ALJ failed to apply the so-called "*Burgess* factors."  (*Id.* at 5-6.)  She also asserted that, had the ALJ afforded controlling weight to her treating psychiatrist's opinion, the disability determination "would have yielded a different result."  (*Id.*)  For the reasons that follow, the Court agrees with her on these and other points.

## II.   DISCUSSION

### A.   Applicable Legal Principles

To be considered disabled under the Social Security Act, "a claimant must establish an 'inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.'"  *Smith v. Berryhill*, 740 F. App'x 721, 722 (2d Cir. 2018) (summary order) (quoting 20 C.F.R. § 404.1505(a)).   To determine whether a claimant is disabled, the ALJ follows a familiar five-step evaluation process.

At Step One, the ALJ determines "whether the claimant is currently engaged in substantial gainful activity . . . ." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)).  At Step Two, the ALJ analyzes "whether the claimant has a severe impairment or combination of impairments . . . ." *Id.*  At Step Three, the ALJ then evaluates whether the claimant's disability "meets or equals the severity" of one of the "Listings" – that is, the specified impairments listed in the regulations.  *Id.*  At Step Four, the ALJ uses an RFC assessment to determine whether the claimant can perform any of her "past relevant work." *Id.*  At Step Five, the ALJ addresses "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's [RFC], age, education, and work

experience." *Id.*  The claimant bears the burden of proving her case at Steps One through Four. *Id.*  At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *Brault v. Soc. Sec. Admin., Comm'r,* 683 F.3d 443, 445 (2d Cir. 2012) (per curiam).

In reviewing a final decision of the Commissioner, this Court "perform[s] an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981).  The Court's role is to determine whether the Commissioner's decision is supported by substantial evidence and free from legal error.  "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted).  The decision is supported by substantial evidence if a "reasonable mind" could look at the record and make the same determination as the Commissioner. *See Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  Though the standard is deferential, "[s]ubstantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (quotation marks and citations omitted).  When the decision is supported by substantial evidence, the Court defers to the Commissioner's judgment.  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

The Commissioner's conclusions of law are not entitled to the same deference.  The Court does not defer to the Commissioner's decision "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004)

(internal quotation marks omitted).  "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

### B.    The Treating Physician Rule

For claims filed before March 20, 2017,[4] the treating physician rule requires "deference to the medical views of a physician who is engaged in the primary treatment of a claimant." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).  Specifically, the rule obliges the ALJ to assign controlling weight to a treating physician's opinion, "so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'"  *Burgess*, 537 F.3d at 128 (quoting 20 C.F.R. § 404.1527(d)(2)); *see also* 20 C.F.R. § 416.927(c)(2).  If the opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques, then it is not entitled to controlling weight.  *Id.*

Yet before he may discount the claimant's treating doctor's opinion, the ALJ must explicitly consider several factors, often called the "*Burgess* factors" after the case in which they were articulated.  *See Burgess*, 537 F.3d at 129 ("[E]ven when a treating physician's opinion is not given 'controlling' weight, the [Social Security] regulations require the ALJ to consider several factors in determining how much weight it should receive.").  The first of these factors is "the length of the treatment relationship and the frequency of examination."  *Id.* (quotation marks and brackets omitted); *see also Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019).  The second

---

[4]      *See* 20 C.F.R. § 416.927.  Here, Plaintiff filed her application for SSI benefits on December 21, 2016.  (R. 15.)  Thus, the treating physician rule for cases filed before March 17, 2017 applies.

factor is "the amount of medical evidence supporting the opinion," and the third is "the consistency of the opinion with the remaining medical evidence." *Id.* (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)).  Fourth and finally, the ALJ must explicitly consider "whether the physician is a specialist." *Id.* at 96 (quoting *Selian*, 708 F.3d at 418).  "After considering [these] factors, the ALJ must 'comprehensively set forth his reasons for the weight assigned to a treating physician's opinion.'" *Burgess*, 537 F.3d at 129 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).  Moreover, they must be "good reasons." *Estrella*, 925 F.3d at 96 (alterations in original) (quoting *Halloran,* 362 F.3d at 32).

In this case, the record contained opinion evidence from the Plaintiff's treating psychiatrist, Dr. Jose Santos.  In a "mental impairment questionnaire" dated March 31, 2017, Dr. Santos stated that the Plaintiff had been diagnosed with "bipolar I disorder, mixed, moderate," along with OCD. (R. 471.)  He indicated that the Plaintiff's psychiatric history included "[m]ultiple hospitalizations and suicide attempts beginning at age 10," and that she had been admitted to the Institute of Living only five months before.  (*Id.*)  The questionnaire noted "normal" "memory, attention, and concentration," along with "logical and coherent" speech, but also "depressive and anxious mood." (R. 472.)  It went on to assess the Plaintiff with "[r]educed" "[a]bility to persist in simple activities without interruption from psychological symptoms," and only "[l]imited" ability in the functional areas of "[h]andling frustration appropriately" and "[a]sking questions or requesting assistance." (R. 473-74.)

In a second questionnaire dated August 4, 2017 (R. 499-503), Dr. Santos reported that the Plaintiff's condition had deteriorated in several respects.  While he noted a "moderate" response to treatment, he also recorded "diminished memory" and "motivation," "decreased sleep," "nightmares, irritability, [and] impulsivity," "diminished appetite" and "weight fluctuations."  (R.

499.)   The questionnaire went on to note that the Plaintiff's "[o]verall cognitive status is diminished;" that she "needs assistance with tasks requiring focus;" and that her "memory [and] concentration are impaired to a moderate degree."  (R. 500.)  And whereas she had exhibited "logical and coherent" speech in March 2017 (R. 472), in August the Plaintiff's speech was characterized by "low" volume and "minimal" content.  (R. 500.)

Perhaps most importantly for present purposes, the questionnaire recorded a decrease in the Plaintiff's functional abilities since the previous March.  Whereas the March questionnaire had rated her as having merely a "reduced" ability "to persist in simple activities without interruption from psychological symptoms" – in other words, that she "[s]ometimes" had a problem with this skill (R. 474) – the August questionnaire rated her as "[f]requently having a problem," or "[l]imited ability."  (R. 502.)  And the August questionnaire assessed the Plaintiff as having no ability whatsoever in the dimensions of "[u]sing appropriate coping skills" and "[h]andling frustration appropriately."  (R. 501.)  These opinions do not suggest that the Plaintiff retains the residual functional capacity to "perform simple, routine tasks, use judgment limited to simple, work related decisions, [and] deal with routine changes in the work setting," as the ALJ held (R. 20), and indeed the Commissioner does not contend otherwise.  (*See generally* ECF No. 35-1, at 4-10) (failing to argue that treating opinions, if fully credited, would nonetheless support the ALJ's RFC determination).  Thus, if they were to have been accorded controlling weight, they might have led to a different RFC and a different claim determination.

In concluding that these opinions merited "little," rather than controlling, weight (R. 23), the ALJ did not correctly apply the *Burgess* factors.  To begin with, his opinion evidences no consideration of the first factor, "the length of the treatment relationship and the frequency of examination."  *Burgess*, 537 F.3d at 129.  Dr. Santos began seeing the Plaintiff in early 2017, and

by August 2017 his practice was seeing her twice a week for therapy and once a month for medical evaluations (R. 499), yet the ALJ evidently did not consider the duration and frequency of treatment in assigning weight to his opinions.  (*See* R. 23-24.)  Moreover, in assigning "great weight" to the opinions of non-examining psychologists while assigning "little weight" to a treating psychiatrist (*id.*), the ALJ apparently did not consider the fourth *Burgess* factor – that is, whether a treating physician's specialization counsels in favor of according controlling weight to his opinion.  *Estrella*, 925 F.3d at 96.  While the ALJ did discuss the third factor at length (*see* R. 23-24, discussing degree to which opinions were consistent with the rest of the record), *Burgess* and its progeny required him "explicitly" to consider more than just this one factor.  *Estrella*, 925 F.3d at 95-96.

Of course, there are limits to the *Burgess* principle.  While "[a]n ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight" is ordinarily "a procedural error," courts will often excuse that error if "'a searching review of the record'" confirms "'that the substance of the treating physician rule was not traversed.'"  *Id.* (quoting *Selian*, 708 F.3d at 419-20, and *Halloran*, 362 F.3d at 33).  In *Stonick v. Saul*, for example, an ALJ accorded little weight to a treating orthopedist's opinion that the claimant could sit or walk for no more than an hour at a time.  No. 3:19-cv-01334 (TOF), 2020 WL 6129339, at *6 (D. Conn. Oct. 19, 2020).  She did not explicitly reference the *Burgess* factors, but this Court nevertheless affirmed her decision, because the record was replete with objective medical evidence confirming that the claimant was not so limited.  *Id.* at *6-7.  "Though the ALJ did not explicitly consider the *Burgess* factors when reviewing [the orthopedist's] medical source opinions, a 'searching review' of the record shows that her decision was supported by 'good reasons' and that 'the substance of the treating physician rule was not traversed.'"  *Id.* at *7 (quoting *Estrella*, 925 F.3d at 96).

11

In this case, however, a searching review of the record does not confirm that the ALJ's reasons for his weight assignments were "good reasons."  As noted above, the ALJ cited two principal reasons for assigning little weight to Dr. Santos's opinions and the opinions of the social worker-therapists in his practice.  "First," he concluded that those opinions were "not supported by the state agency physicians who had an opportunity to review the evidence in the record and found that the claimant had no more than moderate limitations in any area of functioning."  (R. 24.)  And "[s]econd," he found that they were "not consistent with the treatment record which shows improved functioning with ongoing treatment."  (*Id.*)  Neither reason is a "good reason" under the law of this Circuit and the facts of this case.

The ALJ's first reason is inconsistent with the law.  "In the face of a treating physician's opinion, the general rule is that written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability."  *Piorkowski v. Comm'r of Soc. Sec.*, No. 18-cv-3265 (FB), 2020 WL 5369053, at *2 (E.D.N.Y. Sept. 8, 2020) (internal quotation marks, alteration, and citation omitted).  To be sure, the ALJ is permitted to give the opinions of non-examining sources more weight than treating or examining sources "where there is record evidence to support such a determination," *West v. Berryhill*, No. 3:17-cv-1997 (MPS), 2019 WL 211138, at *5 (D. Conn. Jan. 16, 2019) (citing *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993)), but this is not such a case.

In particular, this does not appear to be one of the many cases in which an ALJ carefully examined both the treating physician's and the state agency physicians' opinions for consistency with the entire record, and permissibly gave greater weight to the latter because they were more consistent with that record.  *E.g., Stonick*, 2020 WL 6129339, at *6.  Rather, it appears to be a case in which the ALJ gave great weight to the non-examining physicians' opinions because they "were

both consistent with my findings" – in other words, he gave them weight because they agreed with him.  (R. 23.)  And while the ALJ went on to say that those opinions were also "consistent with . . . the medical evidence of record," he did not provide a detailed explanation as to why, and indeed he concluded that their findings were inconsistent with the record on the issues of "understanding, remembering, and applying information." (*Id.*)  Reviewing his opinion, the Court is left with the impression that the ALJ gave greater weight to the state agency physicians principally because they were state agency physicians; he wrote that he "gave great weight to the opinions of the DDS non-examining physicians . . . . [because] they had the opportunity to review much of the evidence in the file, and as physicians designated by the Commissioner, they have vast knowledge of the Social Security program and its regulations." (*Id.*)  But this gets things backward, because it presumes that the opinions of non-examining agency consultants are presumptively entitled to *more* weight than the opinions of the claimant's treating physician, on account of the agency consultants' greater knowledge of the Social Security system.  The law is of course to the contrary.  *See* 20 C.F.R. § 416.927(c)(2) ("Generally, we give more weight to medical opinions from your treating sources.").

The ALJ's second reason for discounting the Plaintiff's treating source opinions is, under the facts of this case, similarly inconsistent with the law.  He evidently concluded that those opinions were "not consistent with the treatment record" because he read that record as documenting "improved functioning with ongoing treatment." (R. 24.)  His written decision cites therapy notes from 2018 stating that the Plaintiff "was in relatively good spirits" (R. 24, citing note from Feb. 27, 2018); was "better regulated, and less depressed, possibly the least depressed that provide[r] had observed during treatment" (*id.*, citing note from Apr. 12, 2018); had "discuss[ed] her wishes to get a pet cat as well as the responsibility associated with it" (*id.*, citing note from

June 15, 2018); and was "prompt for treatment . . . in good spirits," "talked about her mother's birthday party," and "was able to meet men and begin one relationship." (*Id.*, citing note from Nov. 13, 2018.) In light of these notes, "little weight was afforded" to the opinions of the Plaintiff's treating providers "as they are inconsistent with the treatment notes in the record." (*Id.*)

Under the facts of this case, it was error to latch onto the "ups" in an up-and-down mental health record in assigning weight to the various medical opinions. The Second Circuit has explained that "[c]ycles of improvement and debilitating symptoms of [mental illness] are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Estrella*, 925 F.3d at 97 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014)). It is in the nature of mental illness that claimants will often have good days as well as bad days – or, as the Second Circuit put it, that there will ordinarily be "longitudinal inconsistencies" in the claimant's mental health record – and this common-sense observation was "one of the motivations behind *Burgess'*s procedure requirement of explicit consideration of the frequency, length, nature, and extent of a physician's treatment." *Id.* (citation, quotation marks, and brackets omitted); *see also Corbeil v. Saul*, No. 17-cv-01321, 2019 WL 2590606, at *5 (W.D.N.Y. June 25, 2019) (observing that, because a "mental health patient may have good days and bad days," "the longitudinal relationship between a mental health patient and her treating physician provides the physician with a rich and nuanced understanding of the patient's health that cannot be readily achieved by a single consultative examination"). The ALJ's decision shows that, in deciding how much weight to assign to the treating and non-treating opinions, he thoroughly considered the Plaintiff's "good days." But it does not confirm that he fully considered the "bad days." For this reason, and for the other reasons stated above, he failed

14

to follow the requirements of the treating physician rule.  Remand is thus appropriate to allow the ALJ to weigh the medical opinion evidence under the correct standard.

### C.    The Completeness of the Administrative Record

"The Second Circuit has made clear that the opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Cummings v. Saul*, No. 3:19-cv-01440 (RAR), 2020 WL 5640532, at *3 (D. Conn. Sept. 22, 2020) (citing *Burgess*, 537 F.3d at 128) (internal quotation marks omitted).  "But before an ALJ can determine what weight to give the treating physician's opinion, the record must be complete." *Id.* (citing *Alford v. Saul*, 417 F. Supp. 3d 125, 140 (D. Conn. 2019)).

"An ALJ in a Social Security benefits hearing has an affirmative obligation to develop the record adequately." *Prince v. Berryhill*, 304 F. Supp. 3d 281, 287 (D. Conn. 2018) (citing *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999)).  "Although this obligation is heightened where the plaintiff is pro se, . . . the non-adversarial nature of Social Security benefits proceedings dictates that the obligation exists even when . . . the claimant is represented by counsel." *Id.* (internal citations and quotation marks omitted); *see also Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) ("It is the rule in our circuit that the ALJ, unlike a judge in a trial, must [him]self affirmatively develop the record . . . .") (internal quotation marks omitted).  Failure to develop the record is reversible legal error. *Rose v. Comm'r of Soc. Sec.*, 202 F. Supp. 3d 231, 239 (E.D.N.Y. 2016) ("When an ALJ does not fully develop[ ] the factual record, the ALJ commit[s] legal error.") (quoting *Rosa*, 168 F.3d at 80) (internal quotation marks omitted).

When an ALJ questions the basis for a treating physician's opinion "by asserting that it is contrary to the other findings of [the treating physician] and the other medical evidence of record[,] . . . the proper course of action is not to simply reject the physician's opinion." *Cummings v. Berryhill*, Case No. 3:16-cv-01372 (RAR), 2017 WL 4337103, at *3 (D. Conn. Sept. 30, 2017) (citing *Wade v. Colvin*, No. 3:15-cv-47 (DJS), 2016 WL 1170917, at *9 (D. Conn. March 24, 2016)). Instead, "[t]he ALJ must request additional information from a treating physician . . . when a medical report contains a conflict or ambiguity that must be resolved, the report is missing necessary information, or the report does not seem to be based on medically acceptable clinical and diagnostic techniques." *Busby v. Berryhill*, Civil No. 3:16-cv-664 (AWT), 2017 WL 3575893, at *2 (D. Conn. Aug. 18, 2017) (quoting *Toribio v. Astrue*, No. 06-CV-6532 (NGG), 2009 WL 2366766, at *8 (E.D.N.Y. July 31, 2009)); *see also Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998); *Petruck v. Berryhill*, No. 3:18-cv-715 (AWT), 2019 WL 2171265, at *4 (D. Conn. May 20, 2019).

In this case, the ALJ found that the Plaintiffs' treating providers' opinions were inconsistent with the treatment record which showed improved functioning. (R. 24.) "Given the number of purported internal inconsistencies identified in the treating physician['s] opinions and notes, the ALJ was under an obligation to inquire and attempt to clarify those opinions before discounting them." *Ortiz v. Colvin*, No. 3:15-cv-00956 (SALM), 2016 WL 4005605, at *7 (D. Conn. July 26, 2016). If asked, Dr. Santos "might have been able to provide a medical explanation" or "offer clinical findings in support of his conclusion[s]." *Clark,* 143 F.3d at 118. The last opinion obtained from Dr. Santos is dated August 4, 2017. Treatment records in evidence include another sixteen months of treatment with Dr. Santos, Ms. Fanello-Diaz, and others at their practice. "The ALJ's duty to develop the record 'works in tandem with the so-called "treating

physician rule," which requires the ALJ to give controlling weight to the opinion of a claimant's treating physician if the opinion is well supported by medical findings and is not inconsistent with other substantial evidence.'" *Rocchio v. Astrue*, No. 08 Civ. 3796 (JSR)(FM), 2010 WL 5563842, at *11 (S.D.N.Y. Nov. 19, 2010), *report and recommendation adopted*, No. 08 CIV. 3796 JSR, 2011 WL 1197752 (S.D.N.Y. Mar. 28, 2011) (quoting *Rosado v. Barnhart,* 290 F. Supp. 2d 431, 438 (S.D.N.Y. 2003)).  Under the facts of this case, upon perceiving inconsistencies between the treating opinions and the other medical record evidence, the ALJ should have sought additional information from Dr. Santos.  *See Corbeil v. Colvin,* No. 12-cv-0114 MAT, 2015 WL 1735089, at *7 (W.D.N.Y. Apr. 16, 2015) ("Where . . . an ALJ perceives inconsistencies in a treating physician's report, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly . . . by making every reasonable effort to re-contact the treating source for clarification of the reasoning of the opinion." (quoting *Toribio*, 2009 WL 2366766, at *10)).  On remand, the ALJ is directed to make reasonable efforts to resolve any perceived inconsistencies by seeking supplemental or updated medical source statements from the Plaintiff's treating psychiatrist or other treating clinicians.

## III.   CONCLUSION AND ORDER

Because the Court is remanding this matter in part for further development of the record, it does not reach the Plaintiff's remaining arguments.  On remand, and after further development of the record and a new hearing, the ALJ shall consider the other claims of error not discussed herein.  *Pacheco v. Saul*, Civ. No. 3:19-cv-00987 (WIG), 2020 WL 113702, at *8 (D. Conn. Jan. 10, 2020) ("On remand, the Commissioner will address the other claims of error not discussed herein."); *see also Moreau v. Berryhill*, No. 3:17-cv-00396 (JCH), 2018 WL 1316197, at *4 (D. Conn. Mar. 14, 2018) ("Because the court finds that the ALJ failed to develop the record, it also

suggests that the ALJ revisit the other issues on remand, without finding it necessary to reach whether such arguments would themselves constitute legal error justifying remand on their own.").

Finally, the Court denies the Plaintiff's request that the case be reversed and remanded for an award of benefits rather than a rehearing.  (ECF No. 28-1, at 1, 25.)  To award benefits, a district court must find that, irrespective of the legal error, the record contains "persuasive proof" of the claimant's disability and "a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).  A record contains "persuasive proof" of disability when there is "no apparent basis to conclude" that additional evidence "might support the Commissioner's decision."  *Rosa v. Callahan,* 168 F.3d 72, 83 (2d Cir. 1999).  That is not the case here.  As the ALJ noted, there is evidence in the record that is inconsistent with a claim of "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment."  *Smith*, 740 F. App'x at 722.  A rehearing under the proper standard may therefore result in a finding of no disability, and it would accordingly be improper to remand solely for an award and calculation of benefits.

For the foregoing reasons, the Plaintiff's motion (ECF No. 28) is **GRANTED** to the extent that the decision of Commissioner is **VACATED** and this case is ordered **REMANDED** for further administrative proceedings consistent with this ruling, pursuant to sentence four of 42 U.S.C. § 405(g).  The Court **DENIES** the Plaintiff's alternative motion for an order reversing and remanding the case solely for an award and calculation of benefits**.**  The Commissioner's motion for an order affirming the decision is **DENIED.**

This is not a recommended ruling.  The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure.  (ECF No. 10.)  Appeals can be made directly to the appropriate United States Court

of Appeals from this judgment.  *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c).  The Clerk is

directed to enter judgment in favor of the Plaintiff and close this case.  It is so ordered.


*/s/ Thomas O. Farrish*
_____
Hon. Thomas O. Farrish
United States Magistrate Judge
